## COUNTY OF YORK.

---

NEW ENGLAND MUTUAL FIRE INSURANCE COMPANY *versus*
BUTLER *& al.*

A policy, issued by a mutual insurance company, and a premium note given at the same time for the payment of assessments, are independent contracts.

When mutual contracts are independent, the neglect of one party to perform will not absolve the other party from performance. A contract, made by a mutual insurance company with one of its members, is equally binding as if made with a stranger.

A vote by such a company that, if the assessments upon its premium notes should not be punctually paid, the insurances previously made should be suspended, is of no validity, unless assented to by the insured.

Such a vote, if unassented to, will not impair the force of the policy; so it will not absolve the insured from liability upon his premium note, unless when *first apprized* of it, he notify the company of his assent.

ASSUMPSIT.

The plaintiffs are a Mutual Fire Insurance Company. On the 24th · Nov. 1847, they issued a policy to the defendants for three years, and received their note of that date for $250, " payable in such portions and at such times as the directors may, agreeably to their charter and by-laws, require." By these proceedings, the defendants became members of the company.

By section 10, of the Act of incorporation, it is provided, that " all assessments shall be determined by the directors, and shall always be in proportion to the original amount of the deposit note ; and any member of said company, or his legal representatives, neglecting or refusing to pay the amount which he may be assessed on his note in conformity to this Act, for the space of thirty days after demand shall have been made for the payment of the same in manner the said directors shall appoint, shall be 'liable to the suit of said directors for the recovery of the whole amount of said note with costs of suit."

On Jan'y 12, 1848, an assessment was duly made for the payment of losses incurred by the company. The amount assessed against the defendants was $4,25. On June 7, 1848, they received from the treasurer a written notice as follows; viz. — "Treasurer's Office, Concord, N. H., June 5, 1848. "The assessment on your deposit note, amounting to $4,25, which was ordered by the directors on the 12th of Jan'y last, remains unpaid. By a vote of the corporation, passed at the annual meeting on the 23d of May, 1848, your insurance is suspended in thirty days after you have been notified by letter or otherwise, if payment be not made; and should your property be destroyed by fire, during such suspension, you will have no remedy upon this company. The directors rely upon the prompt payment of the assessments to meet losses, and if these fail, the members of the company cannot receive their pay when their property is destroyed by fire. Be pleased to transmit the amount of your assessment at once to the office by mail or otherwise.

"Yours, &c.

"Jno. Whipple, Treas."

An assessment of $33,75, was made on Nov. 15, 1848, and a further one of $40,00, was made on July 15, 1849. This suit was brought to recover these last two assessments; the amount of the first one, $4,25, having been previously tendered.

The defence was based upon the notice of the 5th of June, 1848, given as aforesaid to the defendants.

The case was submitted to the Court for a legal decision.

*D. Goodenow,* for the plaintiffs.

*Eastman,* for the defendants.

The note is not payable absolutely, but upon contingencies and in proportions, to be subsequently ascertained.

When the note was given, there was no power in the plaintiffs, either by their charter or by-laws to suspend a risk, on account of the non-payment of assessments. The by-law, authorizing such suspension, was a subsequent enactment. That by-law, with the notice under it of June 5,

1848, was a gross and palpable violation of the company's contract. By it, they undertook to dissolve the contract. They notified the defendants that they were no longer insured. They cut off the obligation of the policy, the very obligation upon which the consideration of the note rested. As to all subsequent assessments, the note became void.

Between original parties, a partial failure of consideration is a defence, *pro tanto*, upon a note. *Herbert* v. *Ford*, 29 Maine, 546.

The policy and the note were one transaction, and constituted mutual and dependent contracts. The suspension of the former defeated the obligation of the latter. The company have never revoked that suspension, nor done any thing to revive the obligation of the note. In withdrawing *their* liability, they canceled *ours*, and we had good right to take them at their word. The first notice of the intent to suspend the obligation of the policy was given in June, and related back to a previous date, so that the policy had then been suspended for months, without the knowledge of the insured. The consent of the insured to be discharged from *such* a company may well be presumed. That consent was also shown by the refusal to pay the subsequent assessments. Having been turned out of the company, the defendants were content to remain out.

SHEPLEY, C. J. — The suit is upon a note given by the defendants to the corporation in payment, of so much as should be required, of the premium for a policy of insurance issued to them for the term of three years. It is admitted, that they thereby became members of the corporation and liable to be affected by its charter, by-laws, and regulations. And that the assessments claimed were duly made; the last two of which the defendants refused to pay.

The defence rests upon a notice or communication made on June 5, 1848, by the treasurer of the corporation, that by a vote passed at its annual meeting holden on May 23, 1848, their "insurance is suspended in thirty days" after they have

been notified, " if payment be not made; and should your property be destroyed by fire during such suspension, you will have no remedy upon this company."

The argument for the defendants concedes, that the corporation by its charter, or by-laws, or by the conditions of the policy, or of the note, had no right to suspend the risk for neglect of prompt payment of assessments. A mutual insurance company by its contract with one of its members becomes as perfectly bound by the terms of that contract, as it would, if made with a stranger. The vote of the corporation can amount to no more, than the declaration of one party to a contract, that he will consider himself discharged from it, if the other party does not perform his part of another contract, which formed the consideration of it.

When the contracts of the respective parties are not dependent, the omission of one to perform punctually, does not authorize the other to rescind or annihilate his own contract. The policy and the note were independent contracts, neither could be suspended or rescinded by one party without the consent of the other.

If the defendants had suffered by a loss of their property within the terms of their policy and had claimed an indemnity from the corporation, its own vote passed before that time, that their policy was suspended, could have had no effect upon their rights. It could only have been considered as a vain effort made by a party to relieve itself from its contract without the consent of the other party. And to do it upon terms and in a manner not contained in any charter, by-law or stipulation operative upon both parties.

It is said, that the vote of the corporation " was a gross and palpable violation of the contract on the part of the company;" and it is thence inferred, that the other party was discharged.

The violation of a contract by a party to it, which will discharge another party, must consist of some omission of an act required or commision of one forbidden by it and essential to the continued performance of the contract. A

mere declaration made by a party, that he will not do a future act, which it has not and may not become his duty to perform, or a mere denial, that upon a future contingency, the other party shall not have any benefit from the contract, is not such a violation of it, as will without the assent of the other destroy its efficacy.

The defendants might, as the argument for them alleges, have had a right "to take them at their word," if they had notified them, that they consented that the policy should terminate upon the conditions named in their vote.

Having continued to the termination of their policy to have the right to enforce it for the recovery of any loss, that might have occurred within its terms, they cannot be relieved from the performance of their contract which formed the consideration of it. *Defendants defaulted.*

TENNEY, WELLS, HOWARD and APPLETON, J. J., concurred.